**NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS**[1]

| | |
|---|---|
| NEW JERSEY STATE FIREMEN'S ASSOCIATION,<br><br>Plaintiff,<br><br>v.<br><br>DIRECTOR, NEW JERSEY DIVISION OF TAXATION, PHILADELPHIA CONTRIBUTIONSHIP INSURANCE COMPANY, GERMANTOWN INSURANCE COMPANY, and GREATER NEW YORK MUTUAL INSURANCE COMPANY,<br><br>Defendants.<br><br>And<br><br>STRATHMORE INSURANCE COMPANY,<br>Intervenor, Counterclaimant, and Cross-claimant. | TAX COURT OF NEW JERSEY<br><br>DOCKET NO. 000151-2019<br><br>Approved for Publication<br>In the New Jersey<br>Tax Court Reports |

Decided: January 30, 2023

Michael E. Sullivan for plaintiff
(Parker McCay, PA, attorney).

Michael J. Duffy for defendant
(Matthew J. Platkin, Attorney General of New Jersey, attorney).

Michael A. Guariglia; Jamie Zug for remaining defendants and intervenor
(McCarter & English, LLP, attorney).

SUNDAR, P.J.T.C.

This is the court's opinion on the motion for partial summary judgment filed by plaintiff, New Jersey State Firemen's Association ("NJSFA") and the cross-motion for summary judgment filed by defendant, Director, Division of Taxation ("Taxation"). NJSFA contends that Taxation, via a web-published Notice, improperly extended and applied the statutory cap on its revenue

---

[1] Hon. Jonathan A. Orsen, J.T.C., did not participate in this matter.

stream which is comprised of a 2% tax on fire insurance premiums. Specifically, NJSFA contends that Taxation improperly altered the calculation of the fire insurance premium tax ("FIPT") payable directly to NJSFA by foreign fire insurance companies under N.J.S.A. 54:18-1, by requiring application of the statutory cap used to compute the insurance premium tax ("IPT") payable to Taxation by domestic and foreign insurance companies under N.J.S.A. 54:18A-1. NJSFA contends that since the FIPT statute plainly imposes a tax upon all New Jersey sourced fire insurance premiums, Taxation engaged in impermissibly legislating the FIPT statute, which caused NJSFA to inequitably receive far less FIPT than otherwise mandated under the FIPT statute.

Taxation argues that the IPT statute plainly states that the FIPT paid to NJSFA is part of the IPT payable to Taxation under N.J.S.A. 54:18A-2, therefore, it stands to reason that the cap imposed for purposes of computing the IPT extends and applies to the FIPT. If the cap is not imposed in computing the FIPT, Taxation argues, the FIPT statute could violate the federal dormant commerce clause and equal protection clause by discriminating against foreign fire insurance companies as noted by the Supreme Court in Am. Fire & Cas. Co. v. Dir., Div. of Taxation, 189 N.J. 65, 72 (2006), aff'g 375 N.J. Super. 434 (App. Div. 2005). Taxation also argues that despite the lack of formal regulations, its Notice is valid since it qualifies as a regulatory guidance document and should continue to apply under the "temporary validity doctrine."

The insurance carrier defendants Philadelphia Contributionship Insurance Company ("PCIC"); Germantown Insurance Company ("GIC"); Greater NY Mutual Insurance Company ("GNY"); and intervenor Strathmore Insurance Company ("SIC"), (collectively referred to as "Carriers herein") filed a brief in support of Taxation's arguments. They also contended that the FIPT statute violates the Appropriations Clause of the New Jersey Constitution.

2

For the reasons explained below, the court finds that Taxation's Notice contradicts the plain language and intent of the FIPT statute. That the FIPT is considered "a part of" the IPT payable under N.J.S.A. 54:18A-2(a) does not change the court's conclusion. Taxation's interpretation to the contrary is unreasonable because, (a) the provision in N.J.S.A. 54:18A-2(a) has, since 1945, been interpreted to simply mean that the IPT statute requires a credit for the FIPT paid so that a foreign insurer does not pay a tax on fire insurance premiums twice, and, (b) it results in NJSFA receiving less than the mandated 2% FIPT on "all of the" fire insurance premiums earned in New Jersey. The cap on premiums for purposes of computing the IPT need not, and should not, be extended in computing the FIPT, unless the Legislature acts to amend the respective statutes. Thus, Taxation's interpretation is not entitled to any deference. The court therefore grants NJSFA's motion for partial summary judgment and denies Taxation's motion for summary judgment.

**FACTS**

The following are the undisputed facts as set forth in the pleadings and supporting attachments. NJSFA is a statutorily authorized benevolent association. It funds local firemen's relief associations (there being 538 such entities) and remains in control of such funds. N.J.S.A. 43:17-45. The object of these associations is to maintain a fund "for the relief, support or burial of" among others, local firefighters, their families, and of others engaged in public fire duty. N.J.S.A. 43:17-3.

NJSFA is primarily funded by an annual 2% FIPT imposed only upon foreign insurance companies which sell, among others, fire insurance policies on properties in New Jersey. N.J.S.A. 54:18-1.[2] The insurer must pay the FIPT "upon the amount of all of the premiums received" by

2  NJSFA is required to file an annual report of all local firemen's associations which have complied with the law, and "[o]nly associations so reported" are "entitled to the pro rata share of the moneys arising from the two percent on premiums." N.J.S.A. 43:17-45. The 2% reference is

3

or owed to it, directly to NJSFA's Treasurer with a return "showing the amount of all premiums received by or agreed to be paid to the insurer, for insurance underwritten by that insurer against loss or injury by fire upon real or personal property." Ibid. Failure to do so will result in a revocation of the foreign insurer's authority to do business in the State by the Commissioner of the Department of Banking and Insurance ("DOBI"). Ibid. The statute imposes an identical obligation upon agents, brokers, or insurers to file a return and pay the 2% FIPT to the NJSFA "upon the amount of all of the" fire insurance premiums when they directly or indirectly place fire insurance on property in the State. N.J.S.A. 54:18-2. Once paid, the NJSFA must distribute the same to a local firemen's association or the Firemen's Home. Ibid. See also N.J.S.A. 54:18-8; N.J.A.C. 11:1-5.4; 11-38.5.[3]

Both foreign and domestic insurance companies are subject to the IPT. N.J.S.A. 54:18A-1(a). The IPT is paid to and administered by Taxation pursuant to the "State Tax Uniform Procedure law." N.J.S.A. 54:18A-1.2; 18A-1.3. Taxation and DOBI "oversee[] the taxation of insurance companies operating in this State." Am. Fire & Cas. Co., 189 N.J. at 72.

The IPT is "based on net premiums on contracts of insurance covering property and risks located" in New Jersey "written during" the preceding calendar year. N.J.S.A. 54:18A-1(a). The

_____

to "the tax levied on non-New Jersey insurance companies respecting policies they write on property located in this state [under] . . . N.J.S.A. 54:18-1, and its allocation and use are governed by that statute together with N.J.S.A. 54:17-4." Szabo v. N.J. State Firemen's Ass'n, 230 N.J. Super. 265, 272 (Ch. Div. 1988).

[3] Foreign insurers who sell surplus lines insurance in New Jersey are also subject to the FIPT at a rate of 3%. See N.J.S.A. 17:22-6.59 (of the 5% premium receipts tax, a surplus lines agent pays 3% to the NJSFA, and 2% to DOBI, if the policies cover fire insurance in a taxing district which has or may have "a duly incorporated firemen's relief association").

4

tax rate is 2.1% and is computed on the "taxable premiums." N.J.S.A. 54:18A-2(a).[4] "Any taxes paid to the treasurer of any firemen's relief association of this State pursuant to [N.J.S.A.] 54:18-1 shall be considered a part of the tax payable under this act." Ibid. Based on this provision, foreign insurance carriers receive a credit for the 2% FIPT paid against their 2.1% IPT due. See Governor's Veto Statement to S. 240 (Aug. 8, 1955) ("Concurrently with the 2%" FIPT, "there is also imposed" an IPT "of 2% applicable to premiums received for all lines of insurance, including fire risk premiums" and "to avoid a double tax on fire risk premiums," N.J.S.A. 54:18A-2 "provides for a credit against the general . . . [IPT] for any monies paid into the local fireman's relief associations"). The credit also means that both foreign and domestic insurance carriers pay 2.1% IPT to Taxation.

If premiums collected by an insurance company on policies sold in New Jersey exceed 12.5% of the premiums collected globally, then, the taxable premiums for purposes of the IPT are capped at 12.5% of the global premiums. Thus, and as enacted in 1945, the statute provided:

> **Maximum amount of taxable premiums**
> In the event that the taxable premiums collected by any company as specified in sections two and three of this act [N.J.S.A. 54:18A-2; 18A-3], during any year ending December thirty-first, exceed twelve and one-half per centum (12½%) of the total premiums collected by the company during the same year on all policies and contracts of insurance, whenever and wherever issued, the taxable premiums of such company shall not exceed a sum equal to twelve and one-half per centum (12½%) of such total premiums collected as specified in sections four and five of this act.
>
> [N.J.S.A. 54:18A-6.] [5]

---

[4] "Taxable premiums" is defined to include "all gross premiums, policy fees, premium deposits and assessments provided for by the respective policies or contracts" minus certain amounts (such as returned premiums). N.J.S.A. 54:18A-4.

[5] In 1985, N.J.S.A. 54:18A-6, as quoted was amended to (1) make certain stylistic changes, and (2) include premiums earned by all affiliates of any insurance carriers barring those licensed before June 30, 1984, when computing the cap. L. 1985, c. 294, § 1. In 2005, it was renumbered as subsection a. L. 2005, c. 128.

The intent of the cap is to benefit carriers "domestic and foreign, which made a substantial commitment to New Jersey and contribution to its economy as evidenced by the percentage of overall business written in this State compared to everywhere else." Sponsor's Statement, Senate No. 2995 2 (L. 1985, c. 294). See also Am. Fire & Cas. Co., 189 N.J. at 70, 81-82 (the cap statute "encourages insurance companies to conduct more business in New Jersey because, once the 12.5% threshold is met, an insurer pays premium tax on only 12.5% of its worldwide premiums, regardless of any premiums that it writes in this State in excess of that amount" and while the "State loses a source of tax revenue through application of the cap, the Legislature's goal . . . is to enable the State to receive the long-term benefit of increased investment" and the "the tax revenue that such investments generate").

The loss of revenue by application of the cap is exemplified thusly: if a foreign carrier earns $500,000 in premiums in New Jersey, the IPT at 2.1% would be $10,500. Id. at 73. However, if the carrier's everywhere premiums are $1,000,000, then it qualifies for the cap since the New Jersey-sourced premiums exceed 12.5% of $1,000,000, or $125,000 (12.5% x $1,000,000), and the IPT at 2.1% of the capped premiums would be $2,625 (2.1% of $125,000). Ibid. "Accordingly, through operation of the premium tax cap statute, the insurer saves $ 7,875 -- the difference between the uncapped tax of $10,500 and the capped tax of $2,625." Ibid.

As a result of the 12.5% cap and the statutory FIPT credit, Taxation, since 1945, refunded IPT to an insurance carrier if it had paid FIPT in excess of its IPT liability. However, for tax year 2011 onwards, Taxation decided not to issue such refunds. NJSFA provided extensive e-mail exchanges between itself and Taxation, or by Taxation, in this regard. In its October 19, 2012, e-mail summarizing a discussion of the cap issue with DOBI, Taxation noted that prior to the decision in Am. Fire & Cas. Co., "monies were recouped in retaliation, but after losing the case

6

no one addressed the impact on revenue that was occurring because of it." DOBI's opinion was that the cap statute "prevents adding both taxes together in arriving at Total Tax" but this is problematic "when these two taxes are in play within a taxpayer." Taxation stated that for tax year 2011, it was implementing one "revenue scenario" where the total tax cannot "go below the" FIPT when an insurance carrier takes a credit for the FIPT. Thus, where the cap is used by an insurer, and the IPT "amount is less than the tax calculated on Fire Premiums paid to" the NJSFA, then the "Total Tax liability indicated on Line 16 [Premiums Tax] cannot go below the tax on Fire Premiums."

For tax years 2011 through 2013, Taxation denied refunds to PCIC and GIC when their IPT liability was reduced to a negative because it was lower than the FIPT payment to NJSFA. Taxation also imposed an increased assessment for the IPT. Each carrier sued in the Tax Court (Docket Numbers 006481-2014; 006482-2014). Each settled with refunds (plus interest) being issued by Taxation.[6]

Until 2017, NJSFA received 2% FIPT from the foreign fire carriers. As GNY alleged, prior to tax year 2017, "Taxation issued refunds to foreign fire insurance companies for Fire Tax in excess of 12.5%, if the ratio of New Jersey fire-insured premiums to total fire-insured premiums during the tax period was greater than 12.5%."

Sometime in early 2017, NJSFA discovered that it received less than the 2% FIPT from certain carriers. This was apparently due to a notice Taxation published on its website on June 16, 2016 (the "Notice") which read as follows:

---

[6] For each tax year 2012 and 2013, Taxation refunded $250,439.85; $252,613.71 to PCIC, and $109,571.95; $110,831.18 to GIC. Taxation also gave up its claim for a return of refunds which it had previously issued for tax year 2011 ($244,017.09 to PCIC; $109,125.14 to GIC).

7

**Notice - Insurance Premium Tax (IPT), <u>N.J.S.A.</u> 54:18A-1, <u>et</u> <u>seq</u>., and New Jersey Foreign Fire Insurance Company Tax (NJFT), <u>N.J.S.A.</u> 54:18-1, <u>et</u> <u>seq</u>.**

Under <u>N.J.S.A.</u> 54:18A-2, foreign and domestic insurance companies are required to pay an Insurance Premiums Tax (IPT) equal to 2.1% on the taxable premiums sold that cover property and risks on property located in this State. The IPT is paid into the State General Fund. If the amount of the taxable premiums collected by a company for coverage in this State exceeds 12.5% of the total premiums the company collected worldwide, then the taxable premiums are limited to (or "capped" at) 12.5% of those total premiums collected worldwide. <u>N.J.S.A.</u> 54:18A-6.

Under <u>N.J.S.A.</u> 54:18-1, foreign fire insurance companies are required to pay a New Jersey Foreign Fire Insurance Company tax (NJFT) equal to 2% on fire insurance premiums collected. The NJFT is paid directly to the New Jersey Firemen's Relief Association (FRA). Domestic insurance companies do not pay the NJFT. Under <u>N.J.S.A.</u> 54:18A-2, the NJFT is credited against a foreign insurance company's IPT because NJFT is considered part of IPT. The law does not specify a cap on premiums for NJFT as it does for IPT.

Without a cap for NJFT, a foreign fire insurance company may be subject to more total tax than an insurance company only doing business in New Jersey if the foreign company sells more fire insurance policies in New Jersey than other types of insurance policies, or if the company's NJFT exceeds its IPT (because of the cap). For that reason, [Taxation] will apply the 12.5% cap to the premiums on which the NJFT is calculated.

T[axation] is in the process of revising the Insurance Premiums Tax return and instructions and is currently drafting regulations to reflect the above position. Information regarding these changes will be posted to this website as it becomes available.[7]

---

[7] An earlier version of the Notice contained a prefatory sentence that Taxation "seeks to clarify the relationship between the [IPT], <u>N.J.S.A.</u> 54:18A-1, et seq., and the [FIPT], <u>N.J.S.A.</u> 54:18-1, <u>et seq.</u>" and a concluding sentence that "[q]uestions or concerns regarding the new rules can be emailed to <u>xxxx@ treas.state.nj.us</u>." Both sentences did not appear in the posted version.

The Notice appears to be the third revenue scenario posited by Taxation in its October 19, 2012, e-mail, that a carrier would compute the FIPT credit "on their 'applicable premiums tax' by taxing the 12.5% of New Jersey Fire Premiums, which is that portion of the limitation tax liability directly related to the NJ Fire Premiums." Taxation and DOBI agreed to meet and "create a policy . . . to address this situation."

Thereafter, and for tax year 2016 onwards, Taxation made changes to the IPT return for foreign insurance companies. Schedule A, "Calculation of Taxable Fire Premiums," of the 2016 IPT return noted that Taxation "will cap" the "taxable fire premiums in the same manner" as the cap for taxable premiums "determined as per" N.J.S.A. 54:18A-6. The instructions to Schedule C of the 2016 IPT return (where the cap is computed), notes:

> If calculating Taxable Premiums as per <u>N.J.S.A.</u> 54:18A-6, New Jersey Taxable Fire Premiums are calculated applying the 12.5% limitation cap as follows: Total Worldwide New Jersey Fire Premiums x 12.5% = New Jersey Taxable Fire Premiums. . . . See Notice on the Division of Taxation website at http://www.state.nj.us/treasury/taxation/pdf /IPTNotice.pdf.

On the 2017 IPT return, new Schedule C-1 states that a "taxpayer must apply the 12.5% premium tax cap in the same manner to their worldwide fire premiums, in arriving at the New Jersey taxable fire premiums." The instructions to this Schedule state:

> In the event a taxpayer is eligible for and chooses to calculate their New Jersey Taxable Premiums applying the 12.5% Premium Tax Cap as per <u>N.J.S.A.</u> 54:18A-6 and is subject to the New Jersey Foreign Fire Tax as per <u>N.J.S.A.</u> 54:18-1, the taxpayer must apply the 12.5% Premium Tax Cap in this same manner, in arriving at New Jersey Taxable Fire Premiums. The taxpayer must complete **Schedule C-1- Companies Other than Life Calculation of NJ Taxable Fire Premiums As Provided in N.J.S.A. 54:18A-6. Enter the capped premiums amount on Schedule A (Page 2), Column 3, Line 17 to calculate the capped premium tax liability.** For additional information see IPT Notice at http://www.state.nj.us/treasury/taxation/pdf/lPTNotice.pdf.

Thus, the credit for the FIPT paid by a carrier to the NJSFA is the FIPT after applying the cap on the insurer's worldwide fire insurance premiums.

NJSFA then reached out to DOBI in early 2017 expressing its concern that it was receiving reduced revenues (about $55,000 and $22,000 in 2016 as compared to $400,000-$500,000 and $200,000 in prior years from each PCIC and GIC respectively), provided a memorandum in this

9

regard, and sought a meeting with Taxation and the Attorney General's office. NJSFA also advised DOBI that another insurance company was seeking a refund of about $44,000 based on the 12.5% cap being applied to the FIPT. DOBI then sought information from Taxation as to the posting of the Notice and the status of the proposed regulations.

NJSFA continued to seek advice/clarification from DOBI, especially since the IPT returns were changed to apply the cap to compute the FIPT without regulations. NJSFA's counsel also e-mailed Taxation that it is inappropriate to compute the FIPT based on the 2016 Notice absent any regulation, legislative change, or precedent. In response, Taxation stated that the New Jersey Attorney General's office had reviewed and approved the Notice "and application of the worldwide cap to the" FIPT, and further that "as evidenced in N.J.S.A. 54:18A-2(a)," its Notice was proper and "an accurate application of the law."

In January 2019, Taxation claimed that it had finalized a draft of the proposed regulations. They have yet to be publicly promulgated.

NJSFA then filed this complaint in January 2019 alleging that Taxation improperly extended the cap to fire insurance premiums without statutory or regulatory authority which also reduced NJSFA's funding without such authority. NJFSA asked the court to void Taxation's Notice and require the balance FIPT be paid by the Carriers herein.[8] NJSFA then moved for partial summary judgment on grounds Taxation's Notice is invalid rulemaking, and that the controlling statutes do not allow for such an expansive reading.

---

[8] By consent, parties agreed that the NJSFA's second amended complaint (which included tax years 2016 through 2018) is amended to include tax years 2019-2021 since the cause of action was identical for each tax year.

Taxation cross-moved for summary judgment arguing that its Notice complies with the statutes and the ruling in Am. Fire & Cas. Co., and that if this court finds the Notice to be valid, then the case ends. Taxation contended that the Notice, as a regulatory guidance document, should remain valid under the "temporary validity doctrine" until it publishes the proposed and final regulations. If the court were to find the Notice invalid, Taxation noted, then it should be allowed to address the consequent unconstitutionality that would be implicated by such ruling.

The Carriers herein filed a brief in support of Taxation's summary judgment motion and in opposition to NJSFA's partial summary judgment motion noting that applicability of the cap to fire insurance premiums would avoid violation of the equal protection clause. They also argued that the FIPT statute violates the Appropriations Clause of the New Jersey Constitution.

**ANALYSIS**

The parties agree that the issue before this court is one of legal interpretation, specifically the interplay between N.J.S.A. 54:18-1; 18A-2, and 18A-6(a). As such, the court finds that the issue can be decided by way of summary judgment. See R. 4:46-2(c) (summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law").[9]

---

[9] The court notes it has subject matter jurisdiction. The Notice at issue here is unquestionably an action of Taxation since it amended the IPT returns to conform to the Notice. See N.J.S.A. 2B:13-2(a)(1) (Tax Court "shall have jurisdiction to review actions or regulations with respect to a tax matter of . . . [a]ny State agency or official"). See also R. 8:2(a) (Tax Court "shall have initial review jurisdiction of all final decisions including any act, action, . . . decision" of Taxation); Rutgers Univ. Legislative Affairs Council, Inc. v. Thompson, 12 N.J. Tax 642, 647 n.2 (Tax 1992) (court had subject matter jurisdiction to review plaintiff's complaint which challenged Taxation's letter ruling because the complaint sought a "review of an action, ruling or decision of" Taxation).

The primary issue here is whether the changed methodology of computing the FIPT is supported by the language and intent of the FIPT and IPT statutes. NJSFA argues that under the plain language of each statute, the cap cannot apply in computing the FIPT. The correct methodology of imposing the FIPT and the IPT, it argues, is what has been followed since 1945 without legislative intervention or regulatory implementation, which is that a foreign carrier (1) computes and pays NJSFA 2% FIPT on all of the fire insurance premiums earned in New Jersey under N.J.S.A. 54:18-1, in the year following the tax year at issue; (2) separately computes the IPT on all types of net taxable premiums at the cap, if the cap is applicable; and (3) pays the IPT due to Taxation after taking a credit for the 2% FIPT paid to the NJSFA. If the foreign carrier paid more in FIPT than the IPT due, then Taxation should, as it aways has since 1945, refund the excess. Taxation cannot, without legislation, decide that NJSFA is entitled to less monies by applying the cap to compute the FIPT, so that Taxation can get more by retaining monies which would otherwise be refunded to the carriers if the cap was not applied in computing the FIPT.

Taxation maintains that the last sentence in N.J.S.A. 54:18A-2(a), which provides that "[a]ny taxes paid to the treasurer of any firemen's relief association" under "[N.J.S.A.] 54:18-1 shall be considered a part of the tax payable under" the IPT statute, means that the FIPT is part of the IPT, therefore, it should also be calculated using the cap like the IPT. It notes that the IPT's "tax base" is larger (since it includes all premiums on any type of insurance) than the FIPT's tax base (only fire insurance premiums), therefore, it stands to reason that an insurer's IPT liability should also be larger than (or at least equal to) the FIPT liability. This means refunds, if any, cannot be generated because the credit for the FIPT paid will never exceed the IPT due. Moreover, Taxation argues, the Legislature has explicitly provided that "monies paid to" NJSFA "are not

refundable by the State" (citing N.J.S.A. 54:18A-1(d); 18A-1(e)).[10]   Thus, per Taxation, its solution, which is applying the cap in computing the FIPT due, conforms to the legislative intent explicated in the IPT statute and avoids having foreign insurers "pay a higher tax on fire premiums than domestic companies" contrary to the goal of a credit for FIPT (avoid double tax), and the ruling in Am. Fire & Cas. Co.

The court finds NJSFA's arguments more persuasive.  N.J.S.A. 54:18-1 plainly states that a 2% FIPT is imposed "upon the amount of all of the" fire insurance premiums received by or owed to a foreign insurance carrier (emphasis added).  There are no limitations, caveats, or exceptions to this requirement other than that the insured property be in this State.  Ibid. Cf. N.J.S.A. 54:18A-2 (IPT is imposed on "taxable" premiums, which is defined in N.J.S.A. 54:18A-4 as gross premiums less certain items such as returns made or dividends paid, and then subject to the cap).  There is no cap on the amount of fire insurance premiums subject to the 2% FIPT under either the FIPT statute or the IPT statute.  There is no requirement that NJSFA repay or refund any monies it receives from the foreign fire insurance carriers.  Indeed, this cannot be since the statute plainly requires that a 2% tax on fire insurance premiums received during a tax year be paid to NJSFA in March of the year following a tax year, thus, the one-time payment is a fixed and certain amount.  It follows then that the 2% FIPT cannot be diminished or diverted by Taxation.

---

[10] N.J.S.A. 54:18A-1(d) provides as follows:
> Nothing in this section requiring a partial payment of tax shall be deemed to apply to premiums for fire insurance risks on properties in this State paid to an insurer which is not organized under the laws of this State or to premiums for marine insurance risks.

N.J.S.A. 54:18A-1(e) provides as follows:
> In the calculation of the tax due in accordance with subsection (a) hereof, every insurance company shall be entitled to a credit in the amount of the tax paid as a partial payment in the preceding calendar year and shall be entitled to the return of any amount so paid which shall be found to be in excess of the total amount payable in accordance with this section.

Taxation's contention that it is incredible for the Legislature to require foreign carriers to "fund" NJSFA but then intend "to reimburse the carriers indirectly and surreptitiously with the State fisc" (sic) is thus illogical. Indeed, this contention, albeit in the context of computing the retaliatory tax, was soundly rejected. See Am. Fire & Cas. Co., 375 N.J. Super. at 449, 451 (rejecting the lower court's finding that "the Legislature reasonably could have believed that the [retaliatory] tax, as . . . calculated [by Taxation], could achieve [its] . . . purpose" by noting that there was nothing to suggest that "the Legislature was apprised of [Taxation's] position as to the manner of interaction of the [cap and retaliatory tax] . . . statutes" and that even the insurers first knew of the "effects of that position" only after Taxation rejected their refund requests which were made "several years after the last amendments to the statutes at issue," or that the Legislature was notified of Taxation's "position"). The Supreme Court in agreeing stated that while the Legislature is "presumed" to know the laws it enacted, "it is incongruous to find, as [Taxation] . . . that the Legislature enacted the premium tax cap statute in 1945, but only five years later silently rendered it useless to foreign insurers when it enacted the retaliatory tax statute in 1950. If the Legislature intended such a result, then it could have amended the" the cap statute either in 1950 "or, for that matter, at any point in the intervening half-century." Am. Fire & Cas. Co., 189 N.J. at 82-83.

Here also, and in keeping with the plain language of the FIPT statute, the last sentence in N.J.S.A. 54:18A-2(a) has historically been interpreted and understood as simply being the statutory authority for crediting the 2% FIPT paid to NJSFA against the 2.1% IPT payable to Taxation by the foreign insurance carriers.[11] See also Governor's Veto Statement to S. 240

---

[11] The language of this last sentence has remained unchanged since its enactment in 1945. See L. 1945, c. 132, § 2, last sentence ("Any taxes paid to the treasurer of any firemen's relief association of this State pursuant to section 54:18-1 of the Revised Statutes shall be considered a part of the tax payable under this act."). The language of the cap statute, N.J.S.A. 54:18A-6(a) has remained unchanged since its enactment in 1945. See L. 1945, c. 132, § 6. See also n.5.

(N.J.S.A. 54:18A-2 "provides for a credit against the general . . . [IPT] for any monies paid into the local fireman's relief associations"). As Taxation and the Carriers herein concede, up until 2011-2012, Taxation refunded any monies to the insurers if the credit for FIPT paid by the insurers to NJSFA exceeded the IPT payable to Taxation pursuant to this interpretation. Thus, historically, Taxation never considered it wrong to refund foreign insurers excess IPT due to the FIPT credit, or that the cap should apply to the fire insurance premiums earned by the carrier. Neither Taxation nor the foreign carriers ever complained about, or sought a change to the FIPT computation, legislatively or otherwise.[12] Only after the litigation loss in Am. Fire & Cas. Co., did Taxation decide that it would change the FIPT computation, avoid paying refunds to insurers, and thereby alleviate the impact of the revenue lost by "recoup[ing]" monies through the retaliatory tax. Even after two of the Carriers herein challenged Taxation's refund denials which were based on the same theory underlying the Notice, Taxation did not seek legislative change nor alert the Legislature of Taxation's desired interplay between the FIPT and the IPT. Rather, Taxation issued the Notice, wherein it reformulated the computation of the FIPT and shifted the burden of the change upon NJSFA.

---

[12] An April 22, 1985, memorandum from the Commissioner of DOBI to, among others, the counsel for the Governor, addressed a Senator's concern "to take action to prevent further reductions in the tax revenues utilized to fund" NJSFA and "recoup past revenue loss to the Firemen's Association due to insurers use of the tax laws to avoid the full 2% premium tax." One of the two recommendations but through "legislative action," was to amend the cap statute "to take into consideration the total premium volume of all the companies in a holding company group." The other was to phase out and eliminate the cap. Options were also suggested to increase funding to the Firemen's Association but through legislative action.

In finding Taxation's computation of retaliatory taxes was bereft of legislative notice or approval, the Appellate Division in Am. Fire & Cas. Co., referenced this above memorandum to point out that this document had nothing to "suggest that any insurer raised the issue of the interaction between the premium tax cap and the retaliatory tax statutes." 375 N.J. Super. at 451-52. That observation fully applies here.

In this connection, the court is unpersuaded by the argument advanced by Taxation that it is obligated to refund only excess IPT estimated payments under N.J.S.A. 54:18A-1(d); 18A-1(e), therefore, it cannot be obligated to refund foreign insurers where the FIPT paid to NJSFA exceeds the IPT payable to Taxation.  Presumably, the basis for this contention is that Taxation (i.e., the Treasury or the State) cannot refund what it did not receive.  In other words, Taxation appears to be positing that since the FIPT is paid to NJSFA, there is no addition to the State's taxes. Therefore, the State cannot refund any portion of the same (when the refund arises due to the IPT liability being lower than the FIPT paid) even if that burden is borne by, here, NJSFA.

However, the FIPT is undoubtedly a State-imposed tax, thus, a part of the State's revenues derived from taxation.  It is the State agencies, DOBI and Taxation, which "enforce the provisions" of the FIPT.  N.J.S.A. 54:18-7.  The monies from the FIPT are used for and to further a public purpose.  See Paff v. N.J. State Firemen's Ass'n, 431 N.J. Super. 278, 290-93 (App. Div. 2013) (NJSFA "as an independent State instrumentality, is a public agency" because it is created by law, it is "the direct recipient of substantial revenues generated from specific taxes imposed on insurance premiums" which it must use "in accord with statutory strictures," and it "serves numerous governmental functions" in addition to managing "tax revenues" such as providing "welfare benefits to a significant number of public servants - paid and volunteer firefighters" similar to "other governmental relief and benefit programs."  Thus, NJSFA is a vehicle to "achieve" the State's public purpose, as recognized by DOBI's regulations).  Similar to the credit for taxes paid to other States on the same income under the personal income tax regime so that there is no double or multiple taxation, see N.J.S.A. 54A:4-1(a); Beljakovic v. Dir., Div. of Taxation, 26 N.J. Tax 455, 464 (Tax 2012), the Legislature provided a credit for the FIPT paid against the IPT so as to avoid double taxation.  The Legislature's decision that the FIPT should be

16

directly payable to NJSFA for the specific purpose of supporting our firefighters, does not make the FIPT any less a part of the State tax revenues.[13] In sum, Taxation's interpretation of N.J.S.A. 54:18A-1(d) and (e) support of its decision to apply the cap to the FIPT is flawed and unpersuasive.

In any event, the decision and ability to shift the burden of refunding the FIPT to NJSFA, or the decision to avoid paying refunds to foreign insurers by applying the IPT cap when computing the FIPT, requires legislative action. It is the sole prerogative of the Legislature, not Taxation, to decide whether NJSFA can or should receive less funding by reducing the amount of the tax base. Since 1945, the Legislature has clearly required foreign carriers to directly pay the NJSFA 2% of all fire insurance premiums, the quid pro quo being a full credit against the payable IPT. Up until Taxation's litigation loss in Am. Fire & Cas. Co., it consistently refunded taxes in excess of the IPT due (IPT payable less credit for the 2% FIPT paid to NJSFA), based on the language of the FIPT and IPT statutes which has remained unchanged to date. Even if it is proper for Taxation to determine that there is an alleged loss to the State's tax revenues because it is required to refund excess IPT to the foreign carriers by applying the credit for FIPT paid, it is for the Legislature to decide whether the 2% FIPT should apply to something less than "all of the" fire insurance premiums as currently provided in N.J.S.A. 54:18-1. Funding decisions and changes to the same are entirely legislative functions.

Indeed, the Legislature has acted when there was a revenue loss due to the cap. See, e.g., Sponsor's Statement to S. 2995 (L. 1985 c. 294) (proposed law "will close loopholes in the law which generate revenue to the New Jersey Fireman's Relief Associations (C. 54:17-4 and C. 54:18-

---

[13] Cf. Sponsors' Statement to Concurrent Resolution 27 (2022) ("Firefighters play a vital role in protecting the citizens of this State. It is imperative that the [FIPT] continues to be paid" to NJSFA "to assist firefighters and their families in times of need and that the funds not be diverted for other State purposes"). The resolution proposed an amendment to the New Jersey Constitution that the FIPT be paid directly to NJSFA and cannot be diverted by the Legislature for any other purpose.

1 et seq.) and the insurance premium tax law (C. 54:18A-1 et seq.)" by requiring that the worldwide premiums include those earned by not just the carrier, but also all of its affiliates, since insurance companies were changing their corporate structures to take advantage of the cap, thus causing "a loss of revenue to the relief associations"); Office of the Governor, News Release, A. 3561/S. 2995 (Aug. 15, 1985) (S. 2995 was signed into law "to close a loophole in the State's" IPT law "which had permitted" foreign entities "to avoid" the tax "by establishing subsidiaries in New Jersey" which loophole had resulted in "a decrease to revenue to" NJSFA "which pays death benefits to families of volunteer and paid firemen and maintains a nursing home for retired firemen").[14]

Taxation argues that its decision to apply the cap to fire insurance premiums for computing the FIPT is consistent with the ruling in Am. Fire & Cas. Co. which held that the cap should apply to insurance premiums for purposes of the retaliatory tax imposed only on foreign carriers. There, instead of computing the retaliatory tax at the difference in the IPT rates between New Jersey (2.1%) and the foreign carrier's home state, Taxation taxed the gross premiums earned in New Jersey at the sister state's IPT rate, then gave credit for the IPT computed at New Jersey's 2.1% on the capped premiums.[15] The justification was that "[n]either" New Jersey's cap statute "nor the retaliatory tax statute refers to the other and neither statute indicates that its purpose is secondary

_____

[14] See also n.12.

[15] The retaliatory tax is an additional tax paid by foreign insurers on all insurance premiums at a rate which is the difference between a carrier's home state's tax rate and New Jersey's 2.1% IPT. Am. Fire & Cas. Co., 189 N.J. at 71. Thus, if a foreign carrier's home state imposes a 2.5% tax on premiums earned within that state, then the carrier will pay New Jersey a retaliatory tax at 0.4% in addition to the 2.1% IPT. Id. at 73-74. If the New Jersey earned premiums of $500,000 are capped at $125,000 since they exceed the worldwide amount of $1,000,000, the IPT at 2.1% is $2,625, the retaliatory tax at 0.4% is $2,000, and the total tax of $4,625. Id. at 73-75. Taxation would compute the retaliatory tax at 2.5% of $500,000 (New Jersey earned premiums) or $12,500 and deduct $2,625 IPT for a net retaliatory tax of $9,875. The carrier would pay $12,500 in total taxes ($9,875 + $2,625) as compared to $4,625. Id. at 74-75.

to the purpose of the other." Am. Fire & Cas. Co., 189 N.J. at 74. The cap, Taxation argued, reduced the taxable premiums, thereby the effective tax rate was much lower than the actual 2.1% IPT rate which thus produced a revenue loss. Ibid.[16]

The Court rejected the attempt to recapture the premiums which exceeded the capped amount as "completely eviscerat[ing] the premium tax cap because a foreign insurer's tax liability in New Jersey always will be equal to the insurer's hypothetical tax liability in its home state" thus rendering the cap statute "to mere surplusage as applied to such insurers." Id. at 82. In contrast, the straight-forward computation offered by the carriers (taxing New Jersey source gross premiums at the difference in the IPT rates between New Jersey and the sister state), "preserves the benefit of the premium cap" and furthers the legislative purpose since "the retaliatory tax does not fully recapture the benefits afforded to an insurer by the premium tax cap," while also furthering the intent of the retaliatory tax which is to deter "other states from enacting discriminatory taxes that are above New Jersey's stated tax rate of 2.1%." Id. at 84.

Taxation's reliance on the above case as being a legal validation of its changed position on FIPT computation is misplaced. The instant case does not involve an evisceration of the premiums cap. It does not present an attempt to recapture premiums which are not being taxed due to the cap being applied. It does not involve an attempt to "match" a sister state's IPT rate. While as in Am. Fire & Cas. Co., Taxation is trying to increase revenue for itself, here however, it is at the cost to NJSFA not the foreign carriers. Unlike the goal of the retaliatory tax which is to level the

---

[16] For instance, if the New Jersey source premiums is $500,000, the carrier is paying IPT not "at a rate of 2.1%, but rather, because it only is taxed on $125,000 of its $500,000 of premiums, its effective rate of taxation is 0.525%." Am. Fire & Cas. Co., 189 N.J. at 74. Thus, Taxation argued, the higher the carrier's New Jersey business, the lesser the premium base when the cap is applied, and thus, the lower the effective tax rate. Ibid. Under this "effective tax rate" theory, Taxation would apply its computation even where the sister state's tax rate was lower than New Jersey's 2.1% IPT rate, when normally the lower rate means no retaliatory tax. Id. at 76.

playing field for insurance business, the goal of the FIPT is to fund welfare and benefits for local fire fighters. Unlike the retaliatory tax scheme, the FIPT tax scheme is specific as to how much is to be paid to NJSFA (2%) and the tax base for this purpose ("all of the" New Jersey source fire insurance premiums). There being no ambiguity in this regard, there is no need to "harmonize" or "reconcile" the FIPT and the cap statutes.

Indeed, as in Am. Fire & Cas. Co., it is Taxation, not NJSFA, which is frustrating the legislative intent and purpose of the FIPT. The FIPT statute's goal is entirely benevolent - to compensate the firefighters who put their lives to risk for the safety of New Jersey citizens and residents and by extension, to the firefighters' families. Under Taxation's computation, less monies are available for this purpose. Similarly, by manipulating the tax base for the FIPT (capped fire insurance premiums), Taxation is indirectly ensuring that it gets more of the premium tax revenue pie akin to it using the "effective tax rate" theory to increase its revenues in Am. Fire & Cas. Co. Taxation's effort to do so was unsuccessful there and is equally so here; even more so because its interpretation is at odds with the plain language of N.J.S.A. 54:18-1(a).

In this connection, and as noted above, the fact that the IPT statute requires a credit for the FIPT paid does not make the fire insurance premiums subject to the cap. Since the fire insurance premiums are subject to the IPT (see N.J.S.A. 54:18A-1(a)), it is included in computing the cap for purposes of computing the IPT. It simply does not follow that because the FIPT is considered "a part of" the "payable" IPT under N.J.S.A. 54:18A-2(a), the fire insurance premiums are again, and separately, subject to the cap for purposes of computing the FIPT. Rather, and as explained above, this "part of the" payable IPT simply means that the insurer does not pay a tax on fire insurance premiums twice.

20

The court thus finds that Taxation's interpretation of the FIPT statute vis-a-vis the cap statute is improper and not entitled to any deference. It therefore follows that the Notice is invalid. See Morgan Stanley & Co. Inc. v. Dir., Div. of Taxation, 28 N.J. Tax 197, 225 (Tax 2014) ("While courts generally accord administrative agencies deference in their interpretation of statutes which they are charged with enforcing, that agency may not, under the guise of interpretation, extend a statute to give it a greater effect than its language permits."). Computing the FIPT at 2% of "all of the" fire insurance premiums sourced to New Jersey, and then deducting the same from the carrier's IPT (as capped if the New Jersey premiums exceed 12.5% of its worldwide premiums), as has been the methodology since 1945, is simple, direct, and in conformance with the plain language and intent of the FIPT statute. Changing the formula by reducing the FIPT's tax base is the Legislature's prerogative. Cf. Am. Fire & Cas. Co., 189 N.J. at 85 ("If the Legislature disagrees with" the court's "harmonization of the" retaliatory tax and the cap statute, "then, with appropriate executive branch input, it may examine this issue and amend the statutes as it sees fit").

Due to the above findings, the court need not address NJSFA's contention in its partial summary judgment motion that Taxation violated the Administrative Procedures Act (APA) by its failure to promulgate regulations (note however that an agency's interpretation of a statute, if found to be invalid, does not become valid when it is, as here, subsequently proposed to be formalized into a regulation). For the same reason, the court need not address Taxation's contention that its Notice is a regulatory guidance document which does not require regulations, and even if regulations are found to be required, the Notice should remain valid under the "temporary validity doctrine" until regulations are finalized.[17]

---

[17] Generally, a regulation is required if among others, an agency determination
(4) prescribes a legal standard or directive that is not otherwise expressly provided by or clearly and obviously inferable from the enabling statutory authorization; (5)

**CONCLUSION**

For the above reasons, the court finds that Taxation's decision via its web-published Notice changing the FIPT computation by applying the 12.5% cap to the foreign insurers' fire insurance premiums is contrary to the plain language and intent of N.J.S.A. 54:18-1. Its conclusion that the cap should apply in computing the FIPT because the FIPT is considered "a part of" the "payable" IPT under N.J.S.A. 54:18A-2(a) is unreasonable because, (a) since 1945, this provision has been interpreted to simply mean that the IPT statute requires a credit for the FIPT paid so that a foreign insurer does not pay a tax on fire insurance premiums twice, and (b) it results in NJSFA receiving less than the mandated 2% FIPT on "all of the" fire insurance premiums earned in New Jersey pursuant to N.J.S.A. 54:18-1. The cap on premiums for purposes of computing the IPT need not, and should not, be extended in computing the FIPT unless the Legislature acts to amend the respective statutes. Therefore, Taxation's interpretation of the interplay between N.J.S.A. 54:18-1; 18A-2, and 18A-6(a) is not entitled to any deference.

As noted above, the Carriers herein argued, in their brief in support of Taxation's cross-motion for summary judgment, that the FIPT statute violates the Appropriations Clause of the New

---

reflects an administrative policy that (i) was not previously expressed in any official and explicit agency determination, adjudication or rule, or (ii) constitutes a material and significant change from a clear, past agency position on the identical subject matter; and (6) reflects a decision on administrative regulatory policy in the nature of the interpretation of law or general policy.
[Metromedia, Inc. v. Dir., Div. of Taxation, 97 N.J. 313, 331-32 (1984).]

A regulatory guidance document is one "used by a State agency to provide technical or regulatory assistance or direction to the regulated community to facilitate compliance with State . . . law or a" duly adopted regulation. N.J.S.A. 52:14B-3a(d). The "temporary validity doctrine" permits an "agency to continue using those current processes during a remand for agency rulemaking in compliance with the APA." E.B. v. Div. of Med. Assistance & Health Servs., 431 N.J. Super. 183, 209-10 (App. Div. 2013).

Here, a regulation would be required because the application of the cap to compute the FIPT comports with all of the instances set forth above in Metromedia. Since the court has found the Notice to be invalid, the lack of regulations and the "temporary validity doctrine" do not apply.

22

Jersey Constitution. However, Taxation did not raise this as an issue in its summary judgment motion. Nor did the Carriers herein file their own summary judgment motion. Therefore, the court will not address the merits of this claim here. Rather, they will be dealt when (and if) parties address the alleged constitutional violations. After the parties' respective constitutional allegations are resolved, the court will enter a final Order and Judgment which will also address the refunds, if any, that may be due to the Carriers herein.[18]

The court will enter an Oder granting NJSFA's motion for partial summary judgment, invalidating the Notice, and denying Taxation's motion for summary judgment.

---

[18] Per the pleadings, the FIPT paid by the Carriers herein for tax years 2016-2018 is as follows:

| Carrier | Tax Year | FIPT due at 2% | FIPT paid | Difference |
|---|---|---|---|---|
| PCIC | 2016 | $441,641.35 | $55,205 (with cap) | $386,436.35 |
| | 2017 | $411,733.60 | $51,467 (with cap) | $360,266.60 |
| | 2018 | $385,817.21 | $112,906 (with cap) | $272,911.21 |
| GIC | 2016 | $177,576.34 | $22,197 (with cap) | $155,379.34 |
| | 2017 | $174,379.70 | $21,797 (with cap) | $152,582.70 |
| | 2018 | $170,307.45 | $46,780 (with cap) | $123,527.45 |
| GNY* | 2018 | $564,301.00 | $369,952 (with cap) | $194,349.00 |
| SIC** | 2017 | | | |

PCIC and GIC crossclaimed for indemnification against and refund from Taxation should they be deemed liable for the FIPT for tax years 2016 onwards.

*GNY filed a counterclaim against NJSFA and a cross claim against Taxation. For tax year 2017, it paid the FIPT without applying the cap for fire insurance premiums. If it had applied the cap, its refund would have been larger at $193,688. For tax years 2018 and 2019, GNY paid the FIPT applying the cap. It sought excess refunds paid for tax year 2017 from NJSFA or alternatively for indemnification against and refund from Taxation for years 2017 through 2019.

**SIC counterclaimed against NJSFA for the FIPT it paid for tax year 2017, which was without applying the cap to fire insurance premiums. If it had applied the cap, it would be entitled to a refund of $2,607. For tax years 2018 and 2019 it paid the FIPT after applying the cap. SIC crossclaimed against Taxation for tax years 2018 and 2019.

Both PCIC and GIC filed protective refund claims with Taxation on July 18, 2019, for tax years 2016 through 2018 on Forms A-3730 noting that the claims were related to the instant pending litigation and "intended to preserve the companies administrative appeal rights." By letters dated September 3, 2019, Taxation responded that it "does not accept protective claims," and if "facts related to the refund change" each carrier could "file a new claim for refund" but within the four-year statute of limitations.